UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

FILED
US DISTRICT COURT E.D.N.Y.
★ OCT 08 2010 ★
LONG ISLAND OFFICE

JACKSON LEWIS LLP
*Attorneys for Defendant*
58 South Service Road, Suite 410
Melville, New York 11747
631-247-0404
    MARC S. WENGER, ESQ.

------------------------------------------------------------x
EILEEN VICTORIA WORTHINGTON,

                                Plaintiff,

          -against-

MORGAN STANLEY SMITH BARNEY LLC,

                                Defendant.
------------------------------------------------------------x

CV 10 4624

Civil Action No.: _____

**NOTICE OF REMOVAL**

SPATT, J
TOMLINSON, M

To:    June Connolly, Esq.
        GOLDSON NOLAN CONNOLY, P.C.
        *Attorneys for Plaintiff*
        145 Marcus Boulevard, Suite 4
        Hauppauge, New York 11788

        Defendant, sued herein as "MORGAN STANELY SMITH BARNEY LLC," by its attorneys, Jackson Lewis LLP, hereby removes this action to the United States District Court for the Eastern District of New York, pursuant to 28 U.S.C.A. §§ 1441 and 1446. Removal is proper for the following reasons:

        1.    This action is pending in the Supreme Court of the State of New York, Suffolk County, captioned "Ellen Victoria Worthington v. Morgan Stanley Smith Barney LLC." The Summons and Complaint were filed on or about July 29, 2010. True and correct copies of the Summons and Complaint are annexed hereto as Exhibit A.

2. In her Complaint, Plaintiff makes a claim for, inter alia, alleged violations of the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. §201, et seq. ("FLSA"), which could have originally been brought in this Court. Section 1446(b) provides "The notice of removal of a civil action or proceeding shall be filed within thirty days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleadig setting forth the claim for relief upon which such action or proceeding is based..." This Notice of Removal is filed within 30 days after Defendant accepted service of the Summons and Complaint.

3. On Defendant's information and belief, no other pleadings have been served, and no orders have been entered.

4. This Court has jurisdiction over this action pursuant to 28 U.S.C.A. §§ 1331 and 1441. Plaintiff's Complaint alleges that Defendant, inter alia, failed to pay Plaintiff overtime in violation of the FLSA.

5. Pursuant to 28 U.S.C. § 1441, "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or defendants, to the district court of the United States for the district and dvision embracing the place where such action is pending." This Court has original jurisdiction of the above-captioned matter pursuant to 28 U.S.C. § 1331, which provides that the district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States. Plaintiff's claim that Defendant violated the FLSA arises under the law of the United States.

6. The Court has supplemental jurisdiction over Plaintiff's state law claim pursuant to 28 U.S.C. § 1367(a) while Plaintiff's federal claims are pending.

7. Defendant submits this Notice without waiving any defense to the claims asserted by Plaintiff or conceding that Plaintiff has pled claims upon which relief may be granted.

8. Pursuant to 28 U.S.C. § 1446(d), Defendant will file a copy of this Notice of Removal with the Clerk of the Supreme Court of New York, Suffolk County, and will serve a copy on counsel for the Plaintiff.

WHEREFORE, notice is given that this action is removed from the Supreme Court, Suffolk County, to the United States District Court for the Eastern District of New York.

Dated: October 8, 2010
       Melville, New York

                                        Respectfully submitted,

                                        JACKSON LEWIS LLP
                                        *Attorneys for Defendant*
                                        58 South Service Rd., Suite 410
                                        Melville, New York 11747
                                        (631) 247-0404

                                  By:   _____
                                        MARC S. WENGER, ESQ.

## CERTIFICATE OF SERVICE

I hereby certify that on the 8th day of October, 2010, I caused a true and correct copy of the within **Notice of Removal** to be served upon the following, by depositing a true and correct copy thereof, enclosed in a postage-paid wrapper, in an official depository under the exclusive care and custody of Federal Express for overnight delivery, addressed to the following person(s) at the last known address number set forth after each name:

JUNE CONNOLLY, Esq.
GOLDSON NOLAN CONNOLLY, P.C.
ATTORNEYS FOR PLAINTIFF
145 Marcus Boulevard, Suite 4
Hauppauge, New York 11788

MARC S. WENGER, ESQ.

Exhibit A

MSW

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF SUFFOLK
-----------------------------------------------------------------X
EILEEN VICTORIA WORTHINGTON,

                Plaintiff,

     -against-

MORGAN STANLEY SMITH BARNEY LLC,

                Defendants.

-----------------------------------------------------------------X

Index No.: 10-27823
Date Purchased: 7/29/10

**SUMMONS**

The basis of the venue is
27 7th Avenue
Farmingdale, New York

To the above named Defendants:

    YOU ARE HEREBY SUMMONED to answer the Complaint in this action and to serve a copy of your Answer, or, if the Complaint is not served with this Summons, to serve a Notice of Appearance on the Plaintiff's attorney within 20 days after the service of this Summons, exclusive of the day of service, (or within 30 days after the service is complete if this Summons is not personally delivered to you within the State of New York); and in case of your failure to appear or answer, judgment will be taken against you by default for the relief demanded herein.

Dated: July 28, 2010
       Hauppauge, New York

                                      Yours etc.,

                                      JUNE CONNOLLY
                                      GOLDSON NOLAN CONNOLLY, P.C.
                                      Attorneys for Plaintiff
                                      EILEEN VICTORIA WORTHINGTON
                                      145 Marcus Boulevard, Suite 4
                                      Hauppauge, New York 11788
                                      631-236-4105

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF SUFFOLK
-----------------------------------------------------------------X

EILEEN VICTORIA WORTHINGTON,

                    Plaintiff,

-against-

MORGAN STANLEY SMITH BARNEY LLC,

                    Defendants.

-----------------------------------------------------------------X

Index No.

**VERIFIED COMPLAINT**

    Plaintiff, EILEEN VICTORIA WORTHINGTON, by her attorneys, GOLDSON NOLAN CONNOLLY, P.C., alleges the following as and for its Complaint against Defendant, MORGAN STANLEY SMITH BARNEY LLC:

    1. At all times hereinafter mentioned, Plaintiff, EILEEN VICTORIA WORTHINGTON, (hereinafter "Plaintiff" or "Worthington") was and is a resident of the State of New York and resides at 27 7th Avenue, Farmingdale, New York 11735.

    2. Upon information and belief, at all times hereinafter mentioned, Defendant, MORGAN STANLEY SMITH BARNEY LLC (hereinafter "MSSB") was and is a foreign corporation duly organized and existing under and by virtue of the laws of the State of Delaware and is authorized to do business in the State of New York.

    3. Upon information and belief, at all times hereinafter mentioned, MSSB is a global financial firm engaged in the business of asset management, securities and credit services.

1

## AS AND FOR A FIRST CAUSE OF ACTION
## VIOLATION OF NEW YORK STATE EXECUTIVE LAW §296(1)(a)
## ON ACCOUNT OF VERBAL AND SEXUAL HARASSMENT

4. Plaintiff repeats and realleges each and every paragraph of the Verified Complaint numbered "1" through "3" inclusive, with the same force and effect as though more fully set forth at length herein.

5. WORTHINGTON is a woman and is 40 years old.

6. MSSB is an employer within the meaning of §292 of the Executive Law of the State of New York in that it has four (4) or more employees in its employ.

7. WORTHINGTON was employed by MSSB from approximately March 2007 through November 2009, at which time she was involuntarily terminated.

8. During her employment, WORTHINGTON was employed by MSSB as a Registered Client Service Associate.

9. WORTHINGTON's responsibilities included but were not limited to supporting as many as five brokers with the opening, servicing and maintaining clients' accounts, trading, filing, preparing hypotheticals and managing money accounts and providing support to the staff.

10. On or about March 21, 2007, WORTHINGTON was first employed at the MSSB financial center located at 100 Jericho Quadrangle Jericho, New York 11753.

11. While working in MSSB's Jericho office, WORTHINGTON immediately was subjected to verbal and physical harassment by her broker, Robert Cohen, and his personal assistant, Teraise O'Connor, including but not limited to Robert Cohen yelling at her in the presence of her co-workers and referring to her as an idiot and incompetent, and on ocassion physically pushing her arm aside to get onto her computer terminal.

2

12. MSSB failed to provide WORTHINGTON with training to become familiar with their computer programs, client trading client programs and office procedures and failed to provide other technical support, which training programs are generally provided in brokerage companies at the inception of employment.

13. Although, Teraise O'Connor was assigned this responsibility she failed to train and/or provide guidance to WORTHINGTON despite the fact that she was instructed to do so by Robert Cohen, which lack of training resulted in an escalation of said verbal abuse.

14. On or about March 23, 2007, WORTHINGTON witnessed a fellow colleague, Carlotta Evans, visibly upset and crying. When WORTHINGTON asked what the matter was, her colleague responded, "You will see."

15. Upon information and belief, WORTHINGTON's co-workers placed bets on her to see how long she would last.

16. WORTHINGTON reported the verbal and physical harassment by Mr. Cohen to her Branch Manager, Jeffrey Reiss.

17. As a result, on or about April 16, 2007, WORTHINGTON was transferred to the MSSB financial center located at 600 Northern Boulevard, Great Neck, New York 11021.

18. Upon information and belief, Robert Cohen was not reprimanded for his verbal and physical harassment towards WORTHINGTON.

19. Upon starting at the Great Neck branch, the mistreatment by MSSB continued. WORTHINGTON's new manager, Paul Schroeder, and the Operational Manager, Cheryle Thompson, began to immediately verbally abuse her.

3

20. Ms. Thompson would regularly scream at WORTHINGTON including but not limited to yelling and hanging up the telephone when WORTHINGTON would ask questions on how to perform a task.

21. Ms. Thompson, for example, would yell at Worthington to "get away from me", "get out of my face you make me sick", "I will kill you" and "you crazy white bitch".

22. Additionally, WORTHINGTON was not allowed to use the restroom without getting scolded by Ms. Thompson. Ms. Thompson often stating "get your lazy white ass back to work".

23. Based upon the foregoing treatment, WORTHINGTON was in fear of Ms. Thompson.

24. Mr. Schroeder, WORTHINGTON's manager, would not take any of her complaints seriously nor were any of her co-workers reprimanded for their behavior.

25. Upon information and belief, WORTHINGTON had been marked by her brokers and co-workers as trouble maker because of her complaint of Robert Cohen's hostile behavior, and her subsequent transfer to Defendant's Jericho office. In fact, Ms. Thompson had informed WORTHINGTON that "MSSB was trying to push her out the door because of her complaint in the Defendant's Jericho office."

26. On or about June 2008, resulting from her co-workers' continuous harassment and mistreatment, WORTHINGTON developed diverticulitis and anxiety, which caused her to lose 40 to 50 pounds. Her illnesses resulted in her hospitalization. As a result of her mistreatment, WORTHINGTON would often leave the office shaking and crying. She would become violently ill and throw up.

4

27. Her illness resulted in her being hospitalized and being unable to work for approximately four months.

28. On or about September 2008, WORTHINGTON returned to work from her disability, where she discovered that one of the Brokers, Isabel Levin, had discussed with her co-workers her illness and accused her of lying about her illness claiming that she was not in fact out on disability, but rather was spending her days on the beach.

29. Such accusations are unfounded and simply not true, and contrary to WORTHINGTON's medical condition.

30. On or about the time that she returned from disability, WORTHINGTON started to work for Brett Vetensky, who began to verbally and sexually harass her. By way of examples, his comments included, "If I was single, I would bang the s_ _t out of you", "I'd like to f_ _ck your brains out", "Do you take it up the butt?", "dumb blonde" and stated that if WORTHINGTON "could pass her Series 7 License than anyone can".

31. In addition, Brett Vetensky strongly suggested that WORTHINGTON meet one of his largest client's, Joe Brooks, in New York City for dinner stating "you are his type". WORTHINGTON repeatedly refused his requests. Upon information and belief, Joe Brooks was recently arrested for raping multiple women.

32. WORTHINGTON first reported Mr. Vetensky's verbal and sexual comments to her manager, Paul Schroder. Upon information and belief, Paul Schroder did not take any action to discipline Mr. Vetensky.

33. Upon information and belief, Paul Schroder and Brett Vetensky were close friends.

5

34. On or about April 2009, WORTHINGTON contacted Human Resources and spoke with Ashley Wentworth and Maureen O'Brien about a number of her complaints including, among other things, Mr. Vetensky's verbal and sexual harassments. WORTHINGTON expressed her concern about Mr. Schroder's friendship with Ms. Wentworth.

35. WORTHINGTON explained to Human Resources that she believed that she was being singled out in the office as a result of her previous complaint to her supervisors at the Defendant's Jericho branch. Additionally, WORTHINGTON informed Human Resources of other harassment she was enduring from co-workers including being told to "stop hitting the bottle" by Kyle Kennelly, having her suits purposely written on by Isabel Levin, being directed by her Brokers, including Johnathan Lipschitz and Richard Perry to lie to clients and do certain things she believed to be non-compliant, including among other things, Richard Perry requested WORTHINGTON to log onto his computer using his password to check his emails, which WORTHINGTON refused.

36. Upon information and belief, Human Resources failed to take appropriate measures to discipline WORTHINGTON's offenders. In fact, it appeared that her supervisors instead attempted to find reasons to discipline her even though other Sales Associates were doing the same things she was being accused of doing wrong, including among other things, being disciplined the one time she used her cell phone to obtain information from her address book and using a client's form as a sample.

37. Thereafter, Brenda Serena replaced Maureen O'Brien as the Human Resource person in charge of the Great Neck branch. WORTHINGTON met with Brenda Serena and discussed the sexual harassment, the daily bullying and belief that she was being unfairly singled out because she originally complained about Robert Cohen. Ms. Serena advised "MSSB has a

6

strict non-retaliation policy" and was purportedly attempting to reassure WORTHINGTON that her job was safe and not in any jeopardy. WORTHINGTON replied, "all I want to do is come to work, do my job and not go home sick."

38. On or about November 2009, WORTHINGTON was discharged, not on account of her own performance or fault.

39. WORTHINGTON was wrongfully treated and discharged in a disparate manner than other employees.

40. Pursuant to §296(1)(a) of the Executive Law of the State of New York, Defendants unlawfully harassed, bullied and discriminated against WORTHINGTON in her employment on account of her sex, by treating her in a disparate fashion and wrongfully discharging her, which actions were at the time discriminatory and illegally related.

41. As a result of MSSB's discriminating against WORTHINGTON she suffered serious medical and psychological problems; she was damaged in her present and future employment opportunities; and she experienced and continues to experience mental and physical anguish, and pain and suffering.

### AS AND FOR A SECOND CAUSE OF ACTION
### VIOLATION OF NEW YORK STATE EXECUTIVE LAW §296(7)
### ON ACCOUNT OF RETALIATION

42. Plaintiff repeats and realleges each and every paragraph of the Verified Complaint numbered "1" through "41" inclusive, with the same force and effect as though more fully set forth at length herein.

43. MSSB engaged in unlawful discriminatory practices relating to employment, *inter alia*, verbal and sexual harassment, bullying, and condoning a hostile work environment in

7

violation of the Human Rights Law of the State of New York, *inter alia*, New York Executive Law §296(1)(a).

44. Upon information and belief, WORTHINGTON was afraid to file a complaint with Human Resources because she was told by Ms. Cheryle Thompson that Mr. Paul Schroeder, WORTHINGTON's manager, had a close friendship with Human Resource specialist, Ashley Wentworth.

45. On or about April 2008, after enduring approximately twenty-four months of harassment from her brokers and co-workers and failed attempts to resolve the matter with her supervisors, WORTHINGTON contacted Human Resources.

46. WORTHINGTON spoke with Human Resource specialists Ashley Wentworth, Maureen O'Brien and Brenda Serena about the harassment and hostile work environment at MSSB.

47. WORTHINGTON expressed concern with them about possibility of retaliation from her supervisors and co-workers.

48. Ms. Wentworth, Ms. O'Brien and Ms. Serena assured WORTHINGTON that she would not be discharged as a result of her reporting her co-workers and supervisors to Human Resources as MSSB had a non-retaliation policy.

49. They assured WORTHINGTON that they would look further into the matter and would consider performing a culture study of the branch and/or transferring WORTHINGTON to another office at WORTHINGTON'S request.

50. Upon information and belief, MSSB failed to take any remedial action or appropriate action commensurate with the offenses.

8

51. Ms. Cheryle Thompson, Operation Supervisor, had previously stated to WORTHINGTON that MSSB was trying to "get her out" because she had previously contacted management in the Defendant's Jericho office about the hostile work environment.

52. Approximately seven months after reporting her co-workers' behavior to Human Resources, WORTHINGTON was discharged not on the account of her own performance or fault.

53. MSSB verbally informed WORTHINGTON that she was being terminated as a result of her altering a document. A claim which she adamantly denies.

54. WORTHINGTON did not alter a document. She was following routine office procedure in preparing documents for a client.

55. MSSB did not give a formal reason for WORTHINGTON's discharge.

56. Based on the foregoing, MSSB wrongfully and unlawfully retaliated and discharged in violation of New York State Executive Law §296(7).

57. Upon WORTHINGTON'S termination MSSB wanted WORTHINGTON to sign a release relinquishing MSSB of any liability and a non-disclosure and confidentiality agreement. WORTHINGTON refused as she believed she was wrongfully terminated and was being unlawfully discriminated on the basis of retaliation for filing multiple complaints with her supervisors and human resources.

### AS AND FOR A THIRD CAUSE OF ACTION
### VIOLATION OF THE FAIR LABOR STANDARDS ACT

58. Plaintiff repeats and realleges each and every paragraph of the Verified Complaint numbered "1" through "57" inclusive, with the same force and effect as though more fully set forth at length herein.

9

59. Despite the employment agreement entered into between MSSB and WORTHINGTON, MSSB unilaterally changed the employment terms and conditions, including, among other things, WORTHINGTON's assigned workload, leaving her with no choice but to comply.

60. WORTHINGTON was required by MSSB to work for as many as five brokers at a single time. As a consequence WORTHINGTON had to arrive at approximately 7:00 a.m. each morning and not take lunch breaks to complete her work by the end of each workday.

61. Based on the foregoing, WORTHIGNTON worked approximately fifty-five (55) hours a week without receiving any overtime compensation in violation of the Fair Labor Standards Act.

62. This continued until WORTHINGTON was directed by her supervisors to stop coming in early and working additional hours to avoid a claim for extra compensation pursuant to the Fair Labor Standards Act.

63. Additionally, WORTHINGTON was required to attend off premise mandatory meetings every quarter without being compensated for her time.

64. Based on the foregoing, WORTHINGTON is entitled to additional and extra pay commencing March, 2007 to September, 2009, in an amount to be determined by the Court, and in accordance with the Fair Labor Standards Act.

**WHEREFORE,** Plaintiff WORTHINGTON hereby demands judgment against Defendants MORGAN STANLEY SMITH BARNEY, LLC, as follows:

1. On the First Cause of Action:

(a) judgment against MSSB in the sum of $2,000,000.00, and for such other and further relief as this Court may deem just and proper together with the costs and disbursements of this action.

2. On the Second Cause of Action:

(a) judgment against MSSB in the sum of $2,000,000.00, and for such other and further relief as this Court may deem just and proper together with the costs and disbursements of this action.

3. On the Third Cause of Action:

(a) judgment against MSSB in an amount to be determined by this Court in accordance with the Fair Labor Standards Act, and for such other and further relief as this Court may deem just and proper together with the costs and disbursements of this action.

4. For such other and further relief as to this Court may deem just, proper and equitable.

Dated: Hauppauge, New York
July 28, 2010

JUNE CONNOLLY
GOLDSON NOLAN CONNOLLY, P.C.
Attorneys for Plaintiff
EILEEN VICTORIA WORTHINGTON
145 Marcus Boulevard, Suite 4
Hauppauge, New York 11788
(631) 236-4105

11

INDIVIDUAL VERIFICATION

STATE OF NEW YORK )
                  :s.s.
COUNTY OF SUFFOLK )

EILEEN WORTHINGTON, being duly sworn, deposes and says, that deponent is the Plaintiff in the within action; that deponent has read the foregoing Complaint and knows the contents thereof; that the same is true to deponent's own knowledge, except as to the matters therein stated to be alleged on information and belief, and that as to those matters deponent believes it to be true.

_____
EILEEN WORTHINGTON

Sworn to before me this
28th day of July, 2010.

_____
Notary Public

JUNE CONNOLLY
Notary Public, State of New York
No. 02CO5000635
Qualified in Suffolk County
Commission Expires August 17, 2010

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF SUFFOLK                                            Index No.:

---

EILEEN VICTORIA WORTHINGTON,

                         Plaintiff,

            -against-

MORGAN STANLEY SMITH BARNEY LLC,

                        Defendant.

---

**SUMMONS AND VERIFIED COMPLAINT**

**GOLDSON, NOLAN, CONNOLLY, P.C.**
**Attorney for Plaintiff, Eileen Victoria Worthington**
**145 Marcus Boulevard, Suite 4**
**Hauppauge, New York 11788**
**(631) 236-4105 FAX (631) 236-4110**

---

Service of a copy of the within      is hereby admitted.
Dated:

                                        Attorneys for

---

PLEASE TAKE NOTICE

{ }    NOTICE OF ENTRY
that the within is a (certified) true copy of a
duly entered in the office of the clerk of the within named court on

{ }    NOTICE OF SETTLEMENT
that an order of which the within is a true copy will be presented for settlement to the HON.
         one of the judges of the within named court, at
   on            at

Dated: Hauppauge, New York            Yours, etc.
       July   , 2010                    GOLDSON, NOLAN, CONNOLLY, P.C.
                                          Attorney for Plaintiff,
                                          EILEEN VICTORIA WORTHINGTON
                                          145 Marcus Boulevard, Suite 4
                                          Hauppauge, New York 11788